1   Timothy J. Walton (State Bar No. 184292)
    LAW OFFICES OF TIMOTHY WALTON
2   9515 Soquel Drive Suite #207
    Aptos, CA 95003
3   Phone: (831) 685-9800
    Fax: (650) 618-8687
4
    Daniel L. Balsam (State Bar No. 260423)
5   THE LAW OFFICES OF DANIEL BALSAM
    2912 Diamond Street #218
6   San Francisco, CA 94131
    Tel. & Fax: (415) 869-2873
7
    Attorneys for Defendant/Counter-Claimant
8   KRISTINA KIRBY

9
                    **UNITED STATES DISTRICT COURT**
10
        **NORTHERN DISTRICT OF CALIFORNIA (SAN FRANCISCO DIVISION)**
11

12  DAVISON DESIGN & DEVELOPMENT        ) Case No.     3:11-cv-02970 (EDL)
    INC., *et al*,                       )              (consolidated with
13                                        )              3:11-cv-05107 (EDL))
                  Plaintiffs,             )
14                                        ) **KIRBY'S COUNTER-CLAIMS**
             vs.                          )
15                                        ) **1.   RESTRICTIONS ON UNSOLICITED**
    CATHY RILEY [erroneously sued as      )        **COMMERCIAL E-MAIL (Cal. Bus. &**
16  Catherine Riley],                     )        **Prof.  Code § 17529.5)**
                                          )
17               Defendant.               ) **DEMAND FOR JURY TRIAL (N.D. Cal.**
    _____        ) **Rule 3-6(a))**
18  CATHY RILEY,                          )
                                          )
19            Counter-Claimant,           )
                                          )
20           vs.                          )
                                          )
21  SPIRE VISION HOLDINGS INC. *et al*,   )
                                          )
22            Counter-Defendants          )
    _____        )
23

24  _____

                              **1**

| | |
|---|---|
| 1 | XL MARKETING CORP. *et al.*, |
| 2 | Plaintiffs, |
| 3 | vs. |
| 4 | KRISTINA KIRBY, |
| 5 | Defendant. |
| 6 | KRISTINA KIRBY, an individual, |
| 7 | Counter-Claimant, |
| 8 | vs. |
| 9 | XL MARKETING CORP., a Delaware corporation, |
| 10 | SPIRE VISION HOLDINGS INC., a Delaware corporation, |
| 11 | SPIRE VISION LLC, a Delaware limited liability company, |
| 12 | CAIVIS ACQUISITION CORP. II, a Delaware corporation, |
| 13 | CAIVIS ACQUISITION CORP. III, a Delaware corporation, |
| 14 | PROADVERTISERS LLC, a Delaware limited liability company, |
| 15 | PRIME ADVERTISERS LLC, a Nevada limited liability company, |
| 16 | MEDIACTIVATE LLC, a Nevada limited liability company, |
| 17 | SERVE CLICKS LLC, a Nevada limited liability company, |
| 18 | SILVERINTERACTIVE, a business entity of unknown organization, |
| 19 | OPPORTUNITYCENTRAL, a business entity of unknown organization, |
| 20 | DIGITAL PUBLISHING CORP., a business entity of unknown organization, |
| 21 | WARD MEDIA INC., a Delaware corporation, |
| 22 | ON DEMAND RESEARCH LLC, a Delaware limited liability company, |
| 23 | CONSUMER INJURY ADVOCATES, a business entity of unknown organization, |
| 24 | |

**2**

| | |
|---|---|
| DAVISON DESIGN & DEVELOPMENT INC., a Pennsylvania corporation, THE GREAT AMERICAN PHOTO CONTEST LLC, a New Jersey limited liability company, WHAT IF HOLDINGS LLC, a New Jersey limited liability company, KEYWEBJOBS, a business entity of unknown organization, and DOES 1-100, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
|        Counter-Defendants. | ) |

# I.  INTRODUCTION

1.     Counter-Claimant Kristina Kirby ("Kirby") brings these Counter-Claims against Counter-Defendants for sending and advertising in 16 false and misleading Unsolicited Commercial Emails ("UCEs" or "spams") in 2011 that violated Cal. Business & Professions Code § 17529.5. Kirby seeks statutory damages of $1,000 per email, and attorneys' fees and costs.

# II.  PARTIES

## A.  Counter-Claimant Kristina Kirby

2.     Kristina Kirby ("Kirby") is an individual and was, at all relevant times, a resident of the State of California, within the Northern District.  Kirby is not an Internet Service Provider ("ISP").  Kirby's email address at which she received the spams at issue in this Counter-Claim is a "California email address."  *See* Cal. Bus. & Prof. Code § 17529.1(b)(2) and (3).

## B.  Spire Vision Counter-Defendants

3.     Kirby is informed and believes and thereon alleges that XL Marketing Corp. is currently, and was at all times relevant herein, a Delaware corporation headquartered in New York, New York.  Kirby is informed and believes and thereon alleges that XL Marketing Corp. wholly owns

1   a range of subsidiaries, each focused on a particular area of internet marketing, and its activities

2   include sending and advertising in unlawful spams.

3   4.      Kirby is informed and believes and thereon alleges that Spire Vision Holdings Inc. is

4   currently, and was at all relevant times, a Delaware corporation headquartered in New York,

5   New York.  Kirby is informed and believes and thereon alleges that Spire Vision Holdings Inc. is

6   a wholly-owned subsidiary of XL Marketing Corp., and its activities include sending and

7   advertising in unlawful spams.

8   5.      Kirby is informed and believes and thereon alleges that Spire Vision LLC is currently,

9   and was at all relevant times, a Delaware limited liability company headquartered in New York,

10  New York.  Kirby is informed and believes and thereon alleges that Spire Vision is somehow

11  affiliated with XL Marketing Corp. and/or Spire Vision Holdings Inc., and its activities include

12  sending and advertising in unlawful spams.

13  6.      Kirby is informed and believes and thereon alleges that Caivis Acquisition Corp. II is

14  currently, and was at all times relevant herein, a Delaware corporation headquartered in

15  Washington, District of Columbia.  Kirby is informed and believes and thereon alleges that

16  Caivis Acquisition Corp. II is somehow affiliated with XL Marketing Corp. and/or Spire Vision

17  Holdings Inc., and its activities include sending and advertising in unlawful spams.

18  7.      Kirby is informed and believes and thereon alleges that Caivis Acquisition Corp. III is

19  currently, and was at all times relevant herein, a Delaware corporation headquartered in

20  Washington, District of Columbia.  Kirby is informed and believe and thereon allege that Caivis

21  Acquisition Corp. III is somehow affiliated with XL Marketing Corp. and/or Spire Vision

22  Holdings Inc., and its activities include sending and advertising in unlawful spams.

23

24

8.     Kirby is informed and believes and thereon alleges that ProAdvertisers LLC is currently, and was at all relevant times, a Delaware limited liability company headquartered in Bear, Delaware.  Kirby is informed and believes and thereon allege that ProAdvertisers LLC is a wholly-owned subsidiary of Spire Vision Holdings Inc., and its activities include sending and advertising in unlawful spams.

9.     Kirby is informed and believes and thereon alleges that Prime Advertisers LLC is currently, and was at all relevant times, a Nevada limited liability company headquartered in Reno, Nevada.  Kirby is informed and believes and thereon alleges that Prime Advertisers LLC is a wholly-owned subsidiary of Spire Vision Holdings Inc., and its activities include sending and advertising in unlawful spams.

10.     Kirby is informed and believes and thereon alleges that MediActivate LLC is currently, and was at all relevant times, a Nevada limited liability company headquartered in Las Vegas, Nevada.  Kirby is informed and believes and thereon alleges that MediActivate LLC is a wholly-owned subsidiary of Spire Vision Holdings Inc., and its activities include sending and advertising in unlawful spams.

11.     Kirby is informed and believes and thereon alleges that Serve Clicks LLC is currently, and was at all relevant times, a Nevada limited liability company headquartered in Las Vegas, Nevada and claiming its address to be a box at a branch of The UPS Store in Reno, Nevada. Kirby is informed and believes and thereon alleges that Serve Clicks LLC is somehow affiliated with XL Marketing Corp. and/or Spire Vision Holdings Inc., and its activities include sending and advertising in unlawful spams.

12.     Kirby is informed and believes and thereon alleges that SilverInteractive is, and was at all relevant times, a business entity of unknown organization, claiming its address to be a box at a

1  branch of The UPS Store in Milford, Connecticut.  Kirby is informed and believes and thereon

2  alleges that notwithstanding Counter-Defendants' claims that SilverInteractive is a Delaware

3  Series Limited Liability Company, neither the Delaware nor Connecticut Secretary of State

4  websites have any such entity on file.  Kirby is informed and believes and thereon alleges that

5  none of the Spire Vision Counter-Defendants have a physical presence in Connecticut.  Kirby is

6  informed and believes and thereon allege that SilverInteractive is a subsidiary or division or

7  brand of XL Marketing Corp. and/or its subsidiaries, and its activities include sending and

8  advertising in unlawful spams.

9  13.     Kirby is informed and believes and thereon alleges that OpportunityCentral is, and was at

10  all relevant times, a business entity of unknown organization, claiming its address to be a box at

11  a branch of The UPS Store in Rockledge, Florida.  Kirby is informed and believes and thereon

12  alleges that notwithstanding claims on the *MonthlyUpdates.net* and *Opportunity-Central.net*

13  websites that OpportunityCentral is a limited liability company, neither the Delaware nor Florida

14  Secretary of State websites have any such entity on file.  Kirby is informed and believes and

15  thereon alleges that none of the Spire Vision Counter-Defendants have a physical presence in

16  Florida.  Kirby is informed and believes and thereon allege that OpportunityCentral is a

17  subsidiary or division or brand of XL Marketing Corp. and/or its subsidiaries, and its activities

18  include sending and advertising in unlawful spams.

19  14.     Kirby is informed and believes and thereon alleges that Digital Publishing Corporation

20  *was once* a Delaware corporation with a primary place of business in Washington D.C., but

21  Kirby is informed and believes and thereon alleges that, according to the Washington D.C.

22  Department of Consumer and Regulatory Affairs' website, Digital Publishing Corporation's

23  corporate status was revoked at some point prior to August 2011, when Kirby received the spams

24

1   advertising Digital Publishing Corporation, and its corporate status was still revoked in March

2   2012, when Digital Publishing Corporation (among others) filed the Corrected FAC against

3   Kirby.  Kirby is informed and believes and thereon alleges that Digital Publishing Corp. is a

4   subsidiary of XL Marketing Corp., operates the *FindAccountingPrograms.com* and

5   *FindMBAPrograms.com* websites, and its activities include sending and advertising in unlawful

6   spams.

7   15.       Kirby is informed and believes and thereon alleges that Ward Media Inc. is, and was at

8   all relevant times, a Delaware corporation with a primary place of business in New York, New

9   York.  Kirby is informed and believes and thereon alleges that Ward Media Inc. is a subsidiary

10   of Spire Vision Holdings Inc., operates the *ElementaryTeaching.org* website, and its activities

11   include sending and advertising in unlawful spams.

12   16.       Kirby is informed and believes and thereon allege that On Demand Research LLC is, and

13   was at all relevant times, a Delaware limited liability company with a primary place of business

14   in New York, New York.  Kirby is informed and believes and thereon alleges that On Demand

15   Research LLC is a wholly-owned subsidiary of XL Marketing Corp., operates the

16   *OnDemandResearch.com* website, and its activities include sending and advertising in unlawful

17   spams.

18   17.       Kirby hereafter refers to XL Marketing Corp., Spire Vision Holdings Inc., Spire Vision

19   LLC, Caivis Acquisition Corp. II, Caivis Acquisition Corp. III, ProAdvertisers LLC, Prime

20   Advertisers LLC, MediActivate LLC, Serve Clicks LLC, SilverInteractive, OpportunityCentral,

21   Digital Publishing Corp., Ward Media Inc., and On Demand Research LLC collectively as

22   "Spire Vision."

23

24

**KIRBY'S COUNTER-CLAIMS**

## C. Other Counter-Defendants

18.      Kirby is informed and believes and thereon alleges that Consumer Injury Advocates is a business entity of unknown organization claiming an address in San Diego, California, and operated the *ConsumerInjuryAlert.com* website as of August 2011 when Kirby received the spam at issue.  As of the filing of this Counter-Claim, the website *ConsumerInjury Alert.com* no longer exists, but the *ConsumerInjuryAdvocates.com* website has similar content and purpose, the Disclaimer webpage references the same San Diego address, and the home page identifies "Consumer Injury Alert" in the mission statement and copyright notice.  Kirby is informed and believes and thereon alleges that helping injured consumers find attorneys to help them was not the real purpose of *ConsumerInjuryAlert.com* (or *ConsumerInjuryAdvocates.com*).  Although the home page on both websites nobly states that "Our mission at Consumer Injury Alert is to connect each of our visitors with the most effective ethical representation possible, and to preserve and promote the civil justice system," Kirby is informed and believes and thereon alleges that this is a false claim.  On or about March 21, 2012 – three weeks before Kirby filed this Answer – Kirby's attorney Daniel Balsam submitted a request (as a consumer) to *ConsumerInjuryAdvocates.com* to help him with an asbestos claim, and Balsam never received a response.  Also, Kirby's attorney Timothy Walton submitted a request (as an attorney) to *ConsumerInjuryAdvocates.com* to connect him with clients who requested help with asbestos claims, and Walton similarly never received a response.  Kirby is informed and believes and thereon alleges that if Consumer Injury Advocates' real mission were to connect injured consumers with attorneys, Balsam and/or Walton would have received *some* kind of response after submitting requests.  The true purpose of the websites appears to be collecting consumers'

personal information, such as email addresses, to sell to advertisers.  Indeed, the Privacy Policy

page on the *ConsumerInjuryAlert.com* website stated (when the website was live) that

> The personally identifiable information that Users voluntarily provide to Consumer Injury Alert may be used . . . to present You with promotions, advertisement, and opportunities which may be of interest to You via direct mail, email, phone, text, or sms. . . . and/for [sic] marketing and business purposes.

The Disclaimer page on the *ConsumerInjuryAlert.com* website similarly stated that

> You agree that by voluntarily providing us with Your personal information, You are [] requesting that Consumer Injury Alert distribute your information to its Affiliates, and You expressly consent and request to be contacted by Consumer Injury Alert, its employees, representatives, agents, Affiliates, and third party contracted vendors with promotions and offers, even if the entered telephone number is currently on a federal, state, or wireless Do Not Call list.

19.     Kirby is informed and believes and thereon alleges that Davison Design & Development

Inc. ("Davison") is, and was at all relevant times, a Pennsylvania corporation with a primary

place of business in Pittsburgh, Pennsylvania, and operates the *Davison.com* website.  Davison

advertises that it can develop inventions, but Kirby is informed and believes and thereon alleges

that it has no demonstrated ability to do so, or at least, no ability to do so successfully.  The

Federal Trade Commission sued Davison & Associates Inc. (Davison's predecessor company)

and its principals for fraudulent business practices related to invention development.  Davison

admits on its website, on a page titled "Affirmative Disclosure Statement" that can only be

reached via a small, light-blue-on-dark-blue link at the bottom of the homepage, that only 14 of

48,871 clients in the five years ending January 19, 2011, and 14 of 54,191 clients in the five

years ending December 23, 2011, realized a net profit from Davison's work.  Thus, Kirby is

informed and believes and thereon alleges that historically, 99.97% of would-be inventors lost

money working with Davison, and *every* new inventor-client in 2011, when Davison advertised

in the emails at issue, lost money working with Davison.  Davison also discloses that only

0.001% of its income came from royalties on licenses of consumers' products, which means that

**KIRBY'S COUNTER-CLAIMS**

99.999% of Davison's income comes from up-front flat fees paid by would-be inventors.  Kirby is informed and believes and thereon alleges that every "Davison licensing deal" has a royalty component, and since just 0.001% of its income comes from royalties, Davison's disclosures indicate that it has no demonstrated ability to actually successfully develop products and bring them to market successfully.  Moreover, Davison admits, in the fine print in its spams and on its website, that it "does not perform analysis of the potential feasibility, marketability, patentability or profitability of ideas submitted to it."  Kirby is informed and believes and thereon alleges that these are essential elements of new product development, so Davison does not do new product development.

> Product Development definition: "The overall process of strategy, organization, concept generation, product and marketing plan creation and evaluation, and commercialization of a new product."

Entrepreneur, http://www.entrepreneur.com/encyclopedia/term/82414.html (last visited Dec. 29, 2011).  *See also* Glen L. Urban & John R. Hauser, Design and Marketing of New Products (Prentice Hall 1993).

> "The text begins with a discussion of innovation strategy and is the *[sic]* followed by five sections each representing a major phase in the new-product-development process: 1) Opportunity Identification, 2) Designing New Products, 3) Testing Products, 4) Introduction and 5) Managing the Life Cycle."  (p. xxvi-xxvii)

> [Within step 1:]  "After an organization has adopted a proactive approach to new-product development, the first step in implementing it is to identify areas of opportunity.  This effort is divided into two steps.  In the first step, markets and their associated technologies are defined and opportunities within them are assessed." (p. 78)

> [Within step 2:] "It is important to remember that in developing new products, market research is conducted to support decision making and to create knowledge, intelligence, and wisdom."  (p. 179)

In short, Davison boldly advertises that it can develop new products, and then disclaims it in the fine print.  The Ninth Circuit recently held that even truthful fine print cannot correct misleading

prominent initial representations.  *Williams v. Gerber Products Co.*, 552 F.3d. 934 (9th Cir. 2008).

20.     Kirby is informed and believes and thereon alleges that The Great American Photo Contest LLC is, and was at all relevant times, a New Jersey limited liability company with a primary place of business in Tenafly, New Jersey, and operates the *GreatAmericanPhoto Contests.com* website.  The terms and conditions page on the website references Great American Photo Contest LLC.

21.     Kirby is informed and believes and thereon alleges that What If Holdings LLC is, and was at all relevant times, a New Jersey limited liability company with a primary place of business in Tenafly, New Jersey, and operates the *GreatAmericanPhotoContests.com* website.  A Whois query for the domain name identifies What If Holdings LLC as the registrant.

22.     Kirby is informed and believes and thereon alleges that KeyWebJobs is, and was at all relevant times, a business entity of unknown organization with a primary place of business in Trinity, Florida or New York, New York, and operates the *KeyWebJobs.com* website.  When Kirby received the spams at issue in August 2011, the *KeyWebJobs.com* website identified "Performance Inc." at 333 Park Avenue South #1237, New York, NY 10010.  By December 2011, the website had changed to "ADX, Inc." at 303 Park Avenue South #1037, New York, NY 10010.  Kirby is informed and believes and thereon alleges that the New York Secretary of State does not have a listing for either purported company.  The spams themselves refer to "Online EDU LLC" in Trinity, Florida, but Kirby is informed and believes and thereon alleges that the Florida Department of State's website has no such entity on file.

23.     Kirby does not know the true names or legal capacities of the Counter-Defendants sued herein as Does 1 through 100, inclusive, and therefore sue these Counter-Defendants under such

1    fictitious names.  Kirby will amend this Counter-Claim to allege their true names and capacities

2    when ascertained.  Kirby is informed and believes and thereon alleges that each fictitiously

3    named Counter-Defendant is responsible in some manner for the matters alleged herein, and that

4    Kirby's injuries and damages alleged herein were proximately caused by their conduct.

5

6                                    **IV.  <u>FACTS</u>**

7    24.     Kirby is informed and believes and thereon alleges that at least some of the Spire Vision

8    Counter-Defendants hold themselves out as an advertising network, connecting advertisers (such

9    as Davison) with *third party* publishers or affiliates.  *See* Spire Vision Homepage,

10   *http://www.spirevision.com* (last visited Mar. 21, 2012) (referring to *CommissionWizard.com* as

11   its affiliate network).  However, Kirby is informed and believes and thereon alleges that Spire

12   Vision actually sent the spams at issue *itself*, but took extraordinary steps to hide its identity as it

13   did so.  Spire Vision did not identify itself as the sender in the bodies of any of the spams at

14   issue.  Whois queries for most of the sending domain names indicate that the domain names are

15   registered to "SilverInteractive" (a non-existent company claiming an address at a branch of The

16   UPS Store in Milford, Connecticut) or "OpportunityCentral" (a non-existent company claiming

17   an address at a branch of The UPS Store in Rockledge, Florida).  Kirby is informed and believes

18   and thereon alleges that Spire Vision has no physical presence in Connecticut or Florida, and that

19   Spire Vision engaged in this scheme to prevent anyone from identifying Spire Vision as the true

20   source of the spams by querying the publicly accessible Whois database.  Thus, the domain

21   names' registration information is not traceable to Spire Vision.

22   25.     The emails at issue in this Counter-Claim were all "commercial email advertisements"

23   because they advertised and promoted the lease, sale, rental, gift offer, or other disposition of any

24   property, goods, services, or extension of credit.  *See* Cal. Bus. & Prof. Code § 17529.1(c).

26.     The emails at issue in this Counter-Claim were all "unsolicited commercial email advertisements" because Kirby never gave "direct consent" to any Counter-Defendant to send her commercial email, and Kirby never had a "preexisting or current business relationship" with any Counter-Defendant.  *See* Cal. Bus. & Prof. Code § 17529.1(o), (d), (*l*).  Plaintiffs admit that they acquire email addresses from unnamed third party "affiliates," Corrected FAC at ¶ 16, but even *if* Kirby gave permission to some other website to send her commercial email, that would only constitute "direct consent" for *those* websites' owners, and not to Plaintiffs, to send her commercial email.  *See Balsam v. Trancos Inc. et al,* 203 Cal. App. 4th 1083, 1099 (1st Dist. 2012) (rejecting Trancos' unproven claims that Balsam had given "direct consent" to ValueClick to send him commercial email, and that translated into "direct consent" for Trancos to send him commercial email: "By Trancos's own account, those recipients have not given any direct consent to receive e-mails from Trancos or its advertisers.  The consent Trancos claims to have by virtue of recipients assertedly agreeing to receive e-mails from ValueClick and its partners is highly attenuated at best.")

27.     Kirby sues Spire Vision and other Counter-Defendants for sending and advertising in and 16 spams.

28.     The domain names hyperlinked and advertised in the spams are actually owned and operated by Spire Vision.  A person who clicks on a link in the spam causes his or her computer to launch an Internet browser, which redirects through *PromotionsTargeted.com*, also owned and operated by Spire Vision, and eventually ends up at the final "destination" website, such as *Davison.com*, which is owned and operated by another advertiser, such as Davison Design & Development Inc.

**A.  Spams Advertising Spire Vision's Own "Destination Websites" (10)**

29.      Kirby received spams advertising Spire Vision/Digital Publishing Corp.'s website *FindMBAPrograms.com* on August 13, 2011 with the From Name "BecomeAnEventPlanner," and on August 22, 2011 with the From Name "Event Planner Training."  Both From Names are misleading as to who the spams are actually *from*.  A reasonable recipient could believe that "BecomeAnEvent Planner" and "Event Planner Training" refer to any of hundreds if not thousands of websites offering event planner training, such as *careers-in-event-planning.com* or *QCEventPlanning. com*.  The From Names are further misleading because the destination website is *FindMBAPrograms.com* and a person does not need an MBA (Masters of Business Administration) degree to become an event planner.

30.      Kirby received spams advertising Spire Vision/Digital Publishing Corp.'s website *FindAccountingPrograms.com* on August 24, 2011 with the From Name "Accounting Programs" and on August 25, 2011 with the From Name "Become an Accountant."  Both From Names are misleading as to who the spams are actually *from*.  A reasonable recipient could believe that "Accounting Programs" and "Become an Accountant" refer to any of hundreds if not thousands of sources that can provide training to become an accountant, including but not limited to *Phoenix.edu* or *AccountingCoach.com.*

31.      Kirby received spams advertising Spire Vision/Ward Media Inc.'s website *ElementaryTeaching.org* on August 25, 2011 with the From Name "Become a Teacher" and on August 25, 2011 with the From Name "BeAnElementaryTeacher."  Both From Names are misleading as to who the spams are actually *from*.  A reasonable recipient could believe that "Become a Teacher" and "BeAnElementaryTeacher" refer to any of hundreds if not thousands of

1   entities that can provide training to become an elementary school teacher, including but not

2   limited to *Phoenix.edu* or *MontessoriTraining.net.*

3   32.     Kirby received spams advertising Spire Vision/On Demand Research LLC's website

4   *OnDemandResearch.com* on August 22 and August 24, 2011 with the From Name "CheckCard

5   Survey" and the Subject Line "Complete our job survey for a $500 Free Check Card," and on

6   August 23, 2011 with the From Name "CheckCard Survey" and the Subject Line "Take Our

7   Survey Roger Kirby for a Free $500 Card."  The From Names are misleading as to who the

8   spams are actually *from*; "CheckCard Survey" does not identify anyone.  Kirby is informed and

9   believes and thereon alleges that the Subject Lines are further misleading because the $500 check

10  card is *not* free; a person has to also "complete sponsor offers" which Kirby is informed and

11  believes and thereon alleges involves spending money and/or signing up for products or services.

12  33.     Kirby received a spam advertising Spire Vision/On Demand Research LLC's website

13  *OnDemandResearch.com* on August 24, 2011 with the From Name "OnDemand Survey" and the

14  Subject Line "Receive a Free $20 Gas Card Roger Kirby. Take this Survey."  The From Name is

15  misleading as to who the spam is actually *from*; "OnDemand Survey" does not identify anyone.

16  Kirby is informed and believes and thereon alleges that the Subject Line is further misleading

17  because the $20 gas card is *not* free; a person has to also "complete participation requirements"

18  which Kirby is informed and believes and thereon alleges involves spending money and/or

19  signing up for products or services.

20  **B.  Spam Advertising Spire Vision and Consumer Injury Advocates (1)**

21  34.     Kirby received a spam advertising Spire Vision and Consumer Injury Advocates' website

22  *ConsumerInjuryAlert.com* on August 18, 2011 with the From Name "Zoloft Attorney."  The

23  From Name is misleading as to who the spam is actually *from*.  The From Name could just as

24

**15**

easily refer to any of hundreds if not thousands of attorneys litigating Zoloft-related birth defects. However, Kirby is informed and believes and thereon alleges that the email is not from *any* attorney at all, as the *ConsumerInjuryAlert.com* website admitted, buried in the fine print of the Disclosure statement on the website.  The From Name and the Subject Line ("Popular antidepressant ZOLOFT settlements owed") are both misleading because the real purpose of the *ConsumerInjuryAlert.com* (and *ConsumerInjuryAdvocates.com*) websites appears to be to gather consumers' personal information and sell it to spammers.

**C.   Spam Advertising Spire Vision and Davison Design & Development Inc. (1)**

35.     Kirby received a spam advertising Spire Vision and Davison on August 23, 2011 with the From Name "Roger Kirby DavisonDesigns" and the Subject Line "Invent and We will develop it."  Kirby's first name is Kristina, not Roger, but even if it were Roger, the From Name would be misleading because the spams was not *from* Kirby.  The Subject Line is also misleading, because Davison has no demonstrated ability to successfully develop products and bring them to market.

**D.   Spam Advertising Spire Vision and The Great American Photo Contest LLC and/or What If Holdings LLC (1)**

36.     Kirby received a spam advertising Spire Vision and The Great American Photo Contest LLC and/or What If Holdings LLC's website *GreatAmericanPhotoContests.com* on August 13, 2011 with the From Name "Pet Contest."  The From Name is misleading as to who the spams are actually *from*.  A reasonable recipient could believe that "Pet Contest" refers to any of hundreds if not thousands of websites related to pet contests, including but not limited to *CutestPetContest.com* or *PetCentric.com*.

**E.  Spams Advertising Spire Vision and KeyWebJobs (3)**

37.     Kirby received spams advertising Spire Vision and KeyWebJobs' website

*KeyWebJobs.com* on August 14, August 22, and August 23, 2011 with the From Name "Scott

K.May."  The From Name does not identify Spire Vision or *KeyWebJobs.com*, and in fact the

body of each spam identifies the sender as "Scott Hunter."  The Subject Lines "Stay Home and

Make 900 Today," "Stay Home and Earn 1100 Each Day," and "4700 Each Month with Online

Work" are false and contain misrepresented and are misleading because Kirby is informed and

believes and thereon alleges that KeyWebJobs cannot actually provide jobs that pay the stated

amounts.  The fine print of the terms and conditions admit that there are no guarantees that

anyone will earn any money; moreover, *KeyWebJobs.com* requires that its users purchase the

"product" for $49.95 and every 32 days thereafter, KeyWebJobs will bill $14.95 for monthly use.


**FIRST CAUSE OF ACTION**

**[Violations of California Restrictions on Unsolicited Commercial Email,
California Business and Professions Code § 17529.5]
(Against All Counter-Defendants)**

38.     Kirby hereby incorporates each and every foregoing paragraph as though set forth in full

herein.

39.     Counter-Defendants advertised in and sent 16 unlawful spams to Kirby's California email

address, that are at issue in this Action.

40.     Kirby received the spams at issue within one year prior to filing her Counter-Claims.

**A.  Counter-Defendants Violated Cal. Bus. & Prof. Code § 17529.5(a)(2) – False and
Misrepresented Header Information**

41.     Cal. Business & Professions Code § 17529.5(a)(2) prohibits falsified, misrepresented, or

forged information in or accompanying email headers.

### 1. *Misrepresented Information in From Names*

42.     The From Name in an email is supposed to identify who the email is *from*; it is not supposed to be an advertising message.

43.     Earlier this year, the Court of Appeal of the First District affirmed in all respects the trial court's statement of decision in *Balsam,* 203 Cal. App. 4th at 1088.  The *Balsam* court confirmed that generic From Names like the ones at issue violate the statute, ruling that generic sender names that "do not exist or are otherwise misrepresented when they do not represent any real company and cannot be readily traced back to the true owner/sender," and affirming the trial court's award of $1,000 liquidated damages per spam for the spams with From Names Paid Survey, Your Business, Christian Dating, Your Promotion, Bank Wire Transfer Available, Dating Generic, and Join Elite, but *not* eHarmony.  *Id.* at 1093.

44.     All of the From Names of the spams at issue misrepresented *who* was advertising in the spams.  More specifically:

45.     The From Names "BecomeAnEventPlanner," "Event Planner Training," "Accounting Programs," "Become an Accountant," "Become a Teacher," "BeAnElementaryTeacher," "CheckCard Survey" (2), "CheckCard Survey," and "OnDemand Survey" in the 10 spams advertising Spire Vision's own "destination websites" all misrepresented *who* the advertiser was.

46.     The From Name "ZoloftAttorney" in the Consumer Injury Advocates spam is false and misrepresents *who* the spam is from because – notwithstanding the statement in the body of the email that Kirby "received this notice as a potential client of ConsumerInjuryAlert" – the spam is *not* from an attorney to a potential client, as the *ConsumerInjuryAlert.com* website admitted, buried in the fine print of the Disclosure statement on the website.  The From Name is further misleading because Kirby is informed and believes and thereon alleges that helping injured

consumers find attorneys to help them was not the real purpose of *ConsumerInjuryAlert.com* (or

*ConsumerInjuryAdvocates.com*).  Although the home page on both websites nobly states that

"Our mission at Consumer Injury Alert is to connect each of our visitors with the most effective

ethical representation possible, and to preserve and promote the civil justice system," Kirby is

informed and believes and thereon alleges that this is a false claim.  On or about March 21, 2012

– three weeks before Kirby filed this Answer – Kirby's attorney Daniel Balsam submitted a

request (as a consumer) to *ConsumerInjuryAdvocates.com* to help him with an asbestos claim,

and Balsam never received a response.  Also, Kirby's attorney Timothy Walton submitted a

request (as an attorney) to *ConsumerInjuryAdvocates.com* to connect him with clients who

requested help with asbestos claims, and Walton similarly never received a response.  Kirby is

informed and believes and thereon alleges that if Consumer Injury Advocates' real mission were

to connect injured consumers with attorneys, Balsam and/or Walton would have received *some*

kind of response after submitting requests.  The true purpose of the websites appears to be

collecting consumers' personal information, such as email addresses, to sell to advertisers.

Indeed, the Privacy Policy page on the *ConsumerInjuryAlert.com* website stated (when the

website was live) that

> The personally identifiable information that Users voluntarily provide to
> Consumer Injury Alert may be used . . . to present You with promotions,
> advertisement, and opportunities which may be of interest to You via direct mail,
> email, phone, text, or sms. . . . and/or [sic] marketing and business purposes.

The Disclaimer page on the *ConsumerInjuryAlert.com* website similarly stated that

> You agree that by voluntarily providing us with Your personal information, You
> are [] requesting that Consumer Injury Alert distribute your information to its
> Affiliates, and You expressly consent and request to be contacted by Consumer
> Injury Alert, its employees, representatives, agents, Affiliates, and third party
> contracted vendors with promotions and offers, even if the entered telephone
> number is currently on a federal, state, or wireless Do Not Call list.

47. The From Name "Roger Kirby DavisonDesigns" in the Davison spam is false and misrepresents *who* the spam is from. Kirby is informed and believes and thereon alleges that it was *not* from "Roger" Kirby.

48. The From Name "Pet Contest" in the Great American Photo Contest LLC and/or What if Holdings LLC spam misrepresents *who* the spam is from. While the text may be *descriptive*, it is misleading because it does not distinguish *GreatAmericanPhotoContests.com* from similar websites.

49. The From Name "Scott K.May" in the three KeyWebJobs spams misrepresents the fact that the body of each spam names "Scott Hunter."

### 2. *Misrepresented Information in Domain Name Registrations*

50. Kirby is informed and believes and thereon alleges that six of the nine domain names Spire Vision used to send and advertise in 13 of the 16 spams at issue did not facially identify and are not traceable to any of the Spire Vision companies. More specifically:

51. Kirby is informed and believes and thereon alleges that five of the nine domain names Spire Vision used to send and advertise in 12 of the 16 spams at issue – *bambambros.com*, *rockhallsolutions.com*, *rogersexpressmail.com*, *runapex.com*, and *ryemultimedia.com* – were registered to "SilverInteractive," which does not identify any Spire Vision company and which – like "OpportunityCentral" – Kirby is informed and believes and thereon alleges is a nonexistent company, despite the fact that Spire Vision's websites refer to "SilverInteractive LLC." The unknown business entity SilverInteractive claims its address to be a box at a branch of The UPS Store in Milford, Connecticut – a state in which Kirby is informed and believes and thereon alleges that Spire Vision has no physical presence. Additionally, the Connecticut Secretary of

1   State's website has no listing for "SilverInteractive LLC."  Thus, the domain name registrations

2   are not traceable to any Spire Vision company.

3   52.     Kirby is informed and believes and thereon alleges that one of the nine domain names

4   Spire Vision used to send and advertise in one of the 16 spams at issue – *monthlyupdates.net* –

5   was registered to "OpportunityCentral," which does not identify any Spire Vision company and

6   which – like "SilverInteractive" – Kirby is informed and believes and thereon alleges is a

7   nonexistent company, despite the fact that Spire Vision's websites refers to "OpportunityCentral

8   LLC" and "Opportunity-Central.net LLC."  The unknown business entity OpportunityCentral

9   claims its address to be a box at a branch of The UPS Store in Rockledge, Florida – a state in

10  which Kirby is informed and believes and thereon alleges that Spire Vision has no physical

11  presence.  Additionally, the Florida Secretary of State's website has no listing for

12  "OpportunityCentral."  Thus, the domain name registration is not traceable to any Spire Vision

13  company.

14  53.     Kirby is informed and believes and thereon alleges that only three of the nine domain

15  names Spire Vision used to send and advertise in three of the 16 spams at issue – *lifenew.net*,

16  *myminutes.com*, and *offerseekers.com* – were actually registered to a real company, ServeClicks

17  LLC, claiming an address in Las Vegas, Nevada.

18  54.     In short, Kirby is informed and believes and thereon alleges that Spire Vision knowingly

19  and willfully registered six of the nine domain names it used to send and advertise in 13 of the 16

20  spams at issue using false and inaccurate names, and boxes at commercial mail receiving

21  agencies in states in which it has no physical presence, so that the domain names were not

22  traceable to Spire Vision and materially misrepresented the source of the spams.

23

24

**KIRBY'S COUNTER-CLAIMS**

55.     Because six of the nine domain names Spire Vision used to send and advertise in 13 of

the 16 spams at issue neither identify Spire Vision on their face nor are readily traceable to Spire

Vision, the email headers contain falsified and misrepresented information in violation of Cal.

Business & Professions Code § 17529.5.

> [W]here, as in this case, the commercial e-mailer intentionally uses . . . domain names in its headers that neither disclose the true sender's identity on their face nor permit the recipient to readily identify the sender, . . . such header information *is* deceptive and *does* constitute a falsification or misrepresentation of the sender's identity. . . .

> Here, the domain names were *not* traceable to the actual sender.  The header information is "falsified" or "misrepresented" because Trancos deliberately created it to prevent the recipient from identifying who actually sent the message. . . . . an e-mail with a made-up *and untraceable* domain name affirmatively *and falsely* represents the sender has no connection to Trancos.

> Allowing commercial e-mailers like Trancos to conceal themselves behind untraceable domain names amplifies the likelihood of Internet fraud and abuse-- the very evils for which the Legislature found it necessary to regulate such e-mails when it passed the Anti-spam Law.

> We therefore hold, consistent with the trial court's ruling, that header information in a commercial e-mail is falsified or misrepresented for purposes of section 17529.5(a)(2) when it uses a sender domain name that *neither* identifies the actual sender on its face *nor* is readily traceable to the sender using a publicly available online database such as WHOIS.

*Balsam,* 203 Cal. App. 4th at 1097-1101 (emphasis in original).

### 3.   *Misrepresented Information in Subject Lines*

56.     The Subject Lines (part of the headers) of the four Spire Vision/On Demand Research

LLC spams misrepresent that the $500 check cards and $20 gas cards are free *just* by taking a

survey, because Kirby is informed and believes and thereon alleges that a person also has to

"complete participation requirements," which involves spending money and/or signing up for

products or services.  The Subject Lines make no reference whatsoever to any "participation

requirements."

57.     The Subject Line (part of the headers) of the Consumer Injury Advocates spam "Popular antidepressant ZOLOFT settlements owed" is false and misrepresents that *ConsumerInjury Alert.com* can help injured consumers get Zoloft-related settlements they are owed.  Kirby is informed and believes and thereon alleges that the Subject Line misrepresents the true purpose of the email and the true purpose of *ConsumerInjuryAlert.com* (and *ConsumerInjuryAdvocates.com*, the successor website).  Although the home page on both websites nobly states that "Our mission at Consumer Injury Alert is to connect each of our visitors with the most effective ethical representation possible, and to preserve and promote the civil justice system," Kirby is informed and believes and thereon alleges that that is a false claim.  On or about March 21, 2012 – three weeks before Kirby filed this Answer – Kirby's attorney Daniel Balsam submitted a request (as a consumer) to *ConsumerInjuryAdvocates.com* to help him with an asbestos claim, and Balsam never received a response.  Also, Kirby's attorney Timothy Walton submitted a request (as an attorney) to *ConsumerInjuryAdvocates.com* to connect him with clients who requested help with asbestos claims, and Walton similarly never received a response.  Kirby is informed and believes and thereon alleges that if Consumer Injury Advocates' real mission were to connect injured consumers with attorneys, Balsam and/or Walton would have received *some* kind of response after submitting requests.  The true purpose of the websites appears to be collecting consumers' personal information, such as email addresses, to sell to advertisers.  Indeed, the Privacy Policy page on the *ConsumerInjuryAlert.com* website stated (when the website was live) that

> The personally identifiable information that Users voluntarily provide to Consumer Injury Alert may be used . . . to present You with promotions, advertisement, and opportunities which may be of interest to You via direct mail, email, phone, text, or sms. . . . and/for [sic] marketing and business purposes.

The Disclaimer page on the *ConsumerInjuryAlert.com* website similarly stated that

> You agree that by voluntarily providing us with Your personal information, You are [] requesting that Consumer Injury Alert distribute your information to its

Affiliates, and You expressly consent and request to be contacted by Consumer Injury Alert, its employees, representatives, agents, Affiliates, and third party contracted vendors with promotions and offers, even if the entered telephone number is currently on a federal, state, or wireless Do Not Call list.

58.    The Subject Line (part of the headers) of the Davison Design & Development Inc. spam "Invent and We will develop it!" contains false and misrepresented information because Davison has not demonstrated success at developing inventions and bringing new products to market. The Federal Trade Commission sued Davison & Associates Inc. (Davison's predecessor company) and its principals for fraudulent business practices related to invention development. Davison admits on its website, on a page titled "Affirmative Disclosure Statement" that can only be reached via a small, light-blue-on-dark-blue link at the bottom of the homepage, that only 14 of 48,871 clients in the five years ending January 19, 2011, and 14 of 54,191 clients in the five years ending December 23, 2011, realized a net profit from Davison's work.  Thus, Kirby is informed and believes and thereon alleges that historically, 99.97% of would-be inventors lost money working with Davison, and *every* new inventor-client in 2011, when Davison advertised in the emails at issue, lost money working with Davison.  Davison also discloses that only 0.001% of its income came from royalties on licenses of consumers' products, which means that 99.999% of Davison's income comes from up-front flat fees paid by would-be inventors.  Kirby is informed and believes and thereon alleges that every "Davison licensing deal" has a royalty component, and since just 0.001% of its income comes from royalties, Davison's disclosures indicate that it has no demonstrated ability to actually successfully develop products and bring them to market successfully.  Moreover, Davison admits, in the fine print in its spams and on its website, that it "does not perform analysis of the potential feasibility, marketability, patentability or profitability of ideas submitted to it."  Kirby is informed and believes and thereon alleges that

**KIRBY'S COUNTER-CLAIMS**

these are essential elements of new product development, so Davison does not do new product development.

> Product Development definition: "The overall process of strategy, organization, concept generation, product and marketing plan creation and evaluation, and commercialization of a new product."

Entrepreneur, http://www.entrepreneur.com/encyclopedia/term/82414.html (last visited Dec. 29, 2011). *See also* Glen L. Urban & John R. Hauser, DESIGN AND MARKETING OF NEW PRODUCTS (Prentice Hall 1993).

> "The text begins with a discussion of innovation strategy and is the *[sic]* followed by five sections each representing a major phase in the new-product-development process: 1) Opportunity Identification, 2) Designing New Products, 3) Testing Products, 4) Introduction and 5) Managing the Life Cycle." (p. xxvi-xxvii)

> [Within step 1:]  "After an organization has adopted a proactive approach to new-product development, the first step in implementing it is to identify areas of opportunity.  This effort is divided into two steps.  In the first step, markets and their associated technologies are defined and opportunities within them are assessed." (p. 78)

> [Within step 2:] "It is important to remember that in developing new products, market research is conducted to support decision making and to create knowledge, intelligence, and wisdom."  (p. 179)

In short, Davison boldly advertises that it can develop new products, and then disclaims it in the fine print.  The Ninth Circuit recently held that even truthful fine print cannot correct misleading prominent initial representations.  *Williams v. Gerber Products Co.*, 552 F.3d. 934 (9th Cir. 2008).

59.    Despite the rosy claims of the spams and the *KeyWebJobs.com* website, the Subject Lines "Stay Home and Make 900 Today," "Stay Home and Earn 1100 Each Day," and "4700 Each Month with Online Work" are false and contain misrepresented information.  The fine print of the terms and conditions admit that there are no guarantees that anyone will earn any money;

moreover, *KeyWebJobs.com* requires that its users purchase the "product" for $49.95 and every 32 days thereafter, KeyWebJobs will bill $14.95 for monthly use.

**B. <u>Counter-Defendants Violated Cal. Bus. & Prof. Code § 17529.5(a)(3) – Misleading Subject Lines</u>**

60.   Cal. Bus. & Prof. Code § 17529.5(a)(3) prohibits Subject Lines likely to mislead a reasonable recipient.

61.   The Subject Lines of the four Spire Vision/On Demand Research LLC spams "Complete our job survey for a $500 Free Check Card" (2), "Take Our Survey Roger Kirby for a Free $500 Card," and "Receive a Free $20 Gas Card Roger Kirby. Take this Survey" are likely to mislead a reasonable recipient because Kirby is informed and believes and thereon alleges that the $500 check cards and $20 gas cards are *not* free *just* by taking a survey; a person also has to "complete participation requirements," which involves spending money and/or signing up for products or services.  Moreover, the Subject Lines make no reference whatsoever to any "participation requirements."

62.   The Subject Line (part of the headers) of the Consumer Injury Advocates spam "Popular antidepressant ZOLOFT settlements owed" is likely to mislead a reasonable consumer into believing that *ConsumerInjuryAlert.com* can help injured consumers get Zoloft-related settlements they are owed.  Kirby is informed and believes and thereon alleges that the Subject Line misrepresents the true purpose of the email and the true purpose of *ConsumerInjuryAlert. com* (and *ConsumerInjuryAdvocates.com*, the successor website).  Although the home page on both websites nobly states that "Our mission at Consumer Injury Alert is to connect each of our visitors with the most effective ethical representation possible, and to preserve and promote the civil justice system," Kirby is informed and believes and thereon alleges that that is a false claim. On or about March 21, 2012 – three weeks before Kirby filed this Answer – Kirby's attorney

Daniel Balsam submitted a request (as a consumer) to *ConsumerInjuryAdvocates.com* to help him with an asbestos claim, and Balsam never received a response.  Also, Kirby's attorney Timothy Walton submitted a request (as an attorney) to *ConsumerInjuryAdvocates.com* to connect him with clients who requested help with asbestos claims, and Walton similarly never received a response.  Kirby is informed and believes and thereon alleges that if Consumer Injury Advocates' real mission were to connect injured consumers with attorneys, Balsam and/or Walton would have received *some* kind of response after submitting requests.  The true purpose of the websites appears to be collecting consumers' personal information, such as email addresses, to sell to advertisers.  Indeed, the Privacy Policy page on the *ConsumerInjuryAlert. com* website stated (when the website was live) that

> The personally identifiable information that Users voluntarily provide to Consumer Injury Alert may be used . . . to present You with promotions, advertisement, and opportunities which may be of interest to You via direct mail, email, phone, text, or sms. . . . and/or [sic] marketing and business purposes.

The Disclaimer page on the *ConsumerInjuryAlert.com* website similarly stated that

> You agree that by voluntarily providing us with Your personal information, You are [] requesting that Consumer Injury Alert distribute your information to its Affiliates, and You expressly consent and request to be contacted by Consumer Injury Alert, its employees, representatives, agents, Affiliates, and third party contracted vendors with promotions and offers, even if the entered telephone number is currently on a federal, state, or wireless Do Not Call list.

63.     The Subject Line of the Davison spam "Invent and We will develop it!" is likely to mislead a reasonable recipient into believing that Davison actually has the ability to develop inventions and bring new products to market, when it has no ability to do so, or at any rate, not successfully.  The Federal Trade Commission sued Davison & Associates Inc. (Davison's predecessor company) and its principals for fraudulent business practices related to invention development.  Davison admits on its website, on a page titled "Affirmative Disclosure Statement" that can only be reached via a small, light-blue-on-dark-blue link at the bottom of the

27

homepage, that only 14 of 48,871 clients in the five years ending January 19, 2011, and 14 of

54,191 clients in the five years ending December 23, 2011, realized a net profit from Davison's

work.  Thus, Kirby is informed and believes and thereon alleges that historically, 99.97% of

would-be inventors lost money working with Davison, and *every* new inventor-client in 2011,

when Davison advertised in the emails at issue, lost money working with Davison.  Davison also

discloses that only 0.001% of its income came from royalties on licenses of consumers' products,

which means that 99.999% of Davison's income comes from up-front flat fees paid by would-be

inventors.  Kirby is informed and believes and thereon alleges that every "Davison licensing

deal" has a royalty component, and since just 0.001% of its income comes from royalties,

Davison's disclosures indicate that it has no demonstrated ability to actually successfully develop

products and bring them to market successfully.  Moreover, Davison admits, in the fine print in

its spams and on its website, that it "does not perform analysis of the potential feasibility,

marketability, patentability or profitability of ideas submitted to it."  Kirby is informed and

believes and thereon alleges that these are essential elements of new product development, so

Davison does not do new product development.

> Product Development definition: "The overall process of strategy, organization, concept generation, product and marketing plan creation and evaluation, and commercialization of a new product."

Entrepreneur, http://www.entrepreneur.com/encyclopedia/term/82414.html (last visited Dec. 29,

2011).  *See also* Glen L. Urban & John R. Hauser, Design and Marketing of New Products

(Prentice Hall 1993).

> "The text begins with a discussion of innovation strategy and is the *[sic]* followed by five sections each representing a major phase in the new-product-development process: 1) Opportunity Identification, 2) Designing New Products, 3) Testing Products, 4) Introduction and 5) Managing the Life Cycle." (p. xxvi-xxvii)

> [Within step 1:]  "After an organization has adopted a proactive approach to new-product development, the first step in implementing it is to identify areas of

opportunity.  This effort is divided into two steps.  In the first step, markets and their associated technologies are defined and opportunities within them are assessed." (p. 78)

[Within step 2:] "It is important to remember that in developing new products, market research is conducted to support decision making and to create knowledge, intelligence, and wisdom."  (p. 179)

In short, Davison boldly advertises that it can develop new products, and then disclaims it in the fine print.  The Ninth Circuit recently held that even truthful fine print cannot correct misleading prominent initial representations.  *Williams v. Gerber Products Co.*, 552 F.3d. 934 (9th Cir. 2008).  Thus, a consumer who reasonably believed that "Invent and we will develop it" means that Davison can successfully develop inventions would be sorely misled.

64.    Despite the rosy claims of the spams and the *KeyWebJobs.com* website, the Subject Lines "Stay Home and Make 900 Today," "Stay Home and Earn 1100 Each Day," and "4700 Each Month with Online Work" are likely to mislead a reasonable recipient as to the nature and benefits of *KeyWebJobs.com*.  The fine print of the terms and conditions admit that there are no guarantees that anyone will earn any money; moreover, *KeyWebJobs.com* requires that its users purchase the "product" for $49.95 and every 32 days thereafter, KeyWebJobs.com will bill $14.95 for monthly use.

**C.   Kirby Suffered Damages; Recipients of Unlawful Spam Have Standing to Sue Under Cal. Bus. & Prof. Code § 17529.5 and Recover $1,000 Per Spam Liquidated Damages**

65.    Kirby suffered damages as a result of Counter-Defendants' wrongful conduct.  *See* Cal. Bus. & Prof. Code § 17529(d), (e), (g), (h).

66.    Recipients of unlawful spam have standing to sue.  *See* Cal. Bus. & Prof. Code § 17529.5(b)(1)(A)(iii).  Nothing in the statute requires that a recipient click and purchase the goods or services advertised in the spam.

67.     The California Legislature set liquidated damages at One Thousand Dollars ($1,000) per email in violation of the statute.  *See* Cal. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).

68.     For each spam, the Spire Vision Counter-Defendant and the other advertiser Counter-Defendant are jointly and severally liable for damages for the emails in which they advertised.

69.     Cal. Business & Professions Code § 17529.5 prohibits false and deceptive spam, and thus falls within the express exception-to-preemption set forth in the federal CAN-SPAM Act at 15 U.S.C. § 7707(b)(1).  The exception to preemption is based on *falsity*, not fraud, and Kirby is not required to allege or prove the traditional elements of fraud.  *See Hypertouch Inc. v. ValueClick Inc.*, 192 Cal. App. 4th 805, 825 (2d Dist. 2011), and *Balsam*, 203 Cal. App. 4th at 1102 ("We find the reasoning of *Hypertouch* persuasive on this [preemption] issue, and adopt it here").

**D.  Counter-Defendants are Not Entitled to a Reduction in Statutory Damages**

70.     Kirby is informed and believes and thereon alleges that Counter-Defendants have not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Cal. Business & Professions Code § 17529.5.

71.     Indeed, the Spire Vision Counter-Defendants admit that they acquire email addresses from other sources – their "affiliates."  *See* Corrected First Amended Complaint (Docket #30) at ¶ 16.  Therefore, there is no "direct consent," as defined by Cal. Business & Professions Code § 17529.1(d), which means that Counter-Defendants knowingly and deliberately advertised in and sent *unsolicited* commercial email, a/k/a "spam."

72.     Moreover, From Names and Subject Lines do not write themselves; the From Names and Subject Lines in the spams at issue were not "clerical errors."

73.    Additionally, Spire Vision's actions of registering its Internet domain names to nonexistent companies using boxes at branches of The UPS Store in states in which it has no physical presence indicates willful decisions to create materially false and misrepresented information in and accompanying the email headers, in violation of the statute.

74.    The Counter-Defendants *other* than the Spire Vision Counter-Defendants are not entitled to a reduction in damages because they are strictly liable for the actions of the Spire Vision Counter-Defendants, who acted as their agents.  *Hypertouch*, 192 Cal. App. 4th at 821, 829-30.

**E.  Kirby is Entitled to Attorneys' Fees**

75.    Kirby seeks reimbursement of attorneys' fees and costs as authorized by Cal. Business & Professions Code § 17529.5(b)(1)(C).

76.    The attorneys' fees provision for a prevailing plaintiff is typical of consumer protection statutes and supported by Cal. Code of Civil Procedure § 1021.5.  By prosecuting this action, Kirby expects to enforce an important right affecting the public interest and thereby confer a significant benefit on the general public or a large class of persons.  The necessity and financial burden of private enforcement is such as to make the award appropriate, and the attorneys' fees should not, in the interest of justice, be paid out of the recovery of damages.

WHEREFORE, Kirby prays for judgment against Counter-Defendants, and each of them, as hereinafter set forth.

## PRAYER FOR RELIEF

A.    An Order from this Court declaring that Counter-Defendants violated Cal. Business & Professions Code § 17529.5 by advertising in and sending unlawful spams.

B.      Liquidated damages against Counter-Defendants in the amount of $16,000 – $1,000 for each of 16 unlawful spams – as authorized by Cal. Business & Professions Code § 17529.5(b)(1)(B)(ii), as detailed below:

      1.      Jointly and severally against all of the Spire Vision entities: $10,000 for 10 unlawful spams.

      2.      Jointly and severally against all of the Spire Vision entities and Consumer Injury Advocates: $1,000 for 1 unlawful spam.

      3.      Jointly and severally against all of the Spire Vision entities and Davison Design & Development Inc.: $1,000 for 1 unlawful spam.

      4.      Jointly and severally against all of the Spire Vision entities, The Great American Photo Contest LLC, and What If Holdings LLC: $1,000 for 1 unlawful spam.

      5.      Jointly and severally against all of the Spire Vision entities and KeyWebJobs: $3,000 for 3 unlawful spams.

C.      Punitive damages against the Spire Vision Counter-Defendants as authorized by Cal. Civil Code § 3294 in an amount to be determined by the Court.

D.      Attorneys' fees as authorized by Cal. Business & Professions Code § 17529.5(b)(1)(C), and Cal. Code of Civil Procedure § 1021.5.

E.      Disgorgement of all profits derived from unlawful spams directed to California residents; monies to be turned over to the Unfair Competition Law Fund and used by the California Attorney General to support investigations and prosecutions of California's consumer protection laws.

F.      Costs of suit.

G.     Such other and further relief as the Court deems proper.

THE LAW OFFICES OF DANIEL BALSAM

Dated:_____April 11, 2012_____     /s/ Daniel L. Balsam
                                      Daniel L. Balsam
                                      Attorneys for Defendant/Counter-Claimant
                                      Kristina Kirby

### **DEMAND FOR JURY TRIAL**

Kirby demands a trial by jury.

THE LAW OFFICES OF DANIEL BALSAM

Dated:_____April 11, 2012_____     /s/ Daniel L. Balsam
                                      Daniel L. Balsam
                                      Attorneys for Defendant/Counter-Claimant
                                      Kristina Kirby

KIRBY'S COUNTER-CLAIMS